IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT, IN AND FOR
ST. JOHNS COUNTY, FLORIDA

CASE NO.: CA19 - 471
DIVISION:

ST. AUGUSTINE – ST. JOHNS
COUNTY AIRPORT AUTHORITY,

    Plaintiff,

vs.

BOOMERANG, LLC, a Florida limited
liability company, D/B/A
BOOMERANG AIR CHARTER,

    Defendant,
_____/

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, St. Augustine-St. Johns County Airport Authority (hereinafter "Plaintiff"), by and through the undersigned counsel and sue Defendant, BOOMERANG, LLC, a Florida limited liability company, D/B/A BOOMERANG AIR CHARTER (hereinafter "Defendant") and allege:

### JURISDICTION, VENUE, AND THE PARTIES

1. This is an action for declaratory relief seeking to resolve a legal dispute between the Parties.

2. This is also an action for injunctive relief.

3. Plaintiff owns and operates the Northeast Florida Regional Airport (hereinafter "Airport") in an unincorporated area of St. Johns County.

4. Defendant, BOOMERANG, LLC D/B/A BOOMERANG AIR CHARTER, is a Florida limited liability company authorized to do business in St. Johns County, Florida.

5. This Court has Jurisdiction over Defendant in accordance with Section 48.193, Florida Statutes, because Defendant operates, conducts, engages in, or carries on business in Florida.

6. Venue is proper and appropriate in St. Johns County, Florida for this action pursuant to Chapter 47, Florida Statutes.

## GENERAL ALLEGATIONS

7. Plaintiff is responsible, through the Executive Director, for the operation and administration of the Airport.

8. Plaintiff has regulations and policies as outlined in its "Lease Policy" and "Minimum Operating Standards." A copy of the Minimum Operating Standards is attached hereto and incorporated herein as **Exhibit "A."**

9. All persons desiring to conduct commercial aeronautical or aviation related activities or services at the Airport are required to have in place a written operating agreement or a composite lease/operating agreement detailing their respective compliance with the Minimum Operating Standards and policy direction.

10. The Minimum Operating Standards are intended to be the threshold requirements for those desiring to provide commercial aeronautical or aviation related services to the public at the Airport in accordance with the rules and regulations of the Federal Aviation Administration ("FAA").

11. Aeronautical activities that do not fall within the categories designated in the Minimum Operating Standards still require appropriate Minimum Operating Standards to be established by the Executive Director on a case-by-case basis.

12. The Minimum Operating Standards also set forth the Minimum Insurance Policy limits that must be maintained.

13. Defendant desires to use the Airport for the landing and taking off of aircraft owned or operated by Defendant, the sale of tickets for such aircraft flights, the loading and unloading of passengers and their luggage and other operations associated with a scheduled FAR Part 135 operator and on-demand FAR Part 135 operator.

14. Specifically, Defendant owns or operates a Pilatus aircraft with tail number N360DA and other aircraft that have been associated with said Charter Certificate #OBGA623K as issued by the Federal Aviation Administration.

15. Defendant announced its intent to begin flying scheduled FAR Part 135 service between St. Augustine, Florida and Marsh Harbour, Bahamas beginning on or near April 2019. The Jacksonville Business Journal authored an article on October 3, 2018 advertising Defendant's service. Defendant also advertised the same including the number of seats available on social media, specifically Facebook. A copy of the article, Facebook post, and Facebook advertisement is attached hereto and incorporated herein as **Exhibit "B."**

16. Plaintiff, by and through its Executive Director Edward R. Wuellner, sent Defendant a letter by certified mail and email on March 29, 2019 informing Defendant that the Airport was aware of Defendant's intent to begin flying FAR Part 135 scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas. In that letter, Plaintiff informs Defendant that the execution of an operating agreement is required prior to Defendant beginning such scheduled service. A copy of the letter Plaintiff sent to Defendant is attached hereto and incorporated herein as **Exhibit "C."**

17. On April 6, 2019 Plaintiff received letter from counsel on Defendant's behalf. A copy of the letter Defendant sent in response to Plaintiff's letter is attached hereto and incorporated herein as **Exhibit "D."**

18. Defendant maintains in the letter that Defendant is merely providing "on-demand" Part 135 service and otherwise does not have to execute an operating agreement because the Airport is for public use.

19. Defendant has repeatedly asserted that some or all aircraft associated with its charter certificate are not based at Northeast Florida Regional Airport despite almost daily evidence to the contrary, including independent lease agreements entered into by the aircraft owners with the airport's fixed base operator, Atlantic Aviation.

20. According to FlightAware, a website used to track flights of aircraft, Defendant has flown aircraft tail wing number N360DA from St. Augustine, Florida and Marsh Harbour, Bahamas at least four times since March 30, 2019. A copy of the FlightAware activity log for tail number N360DA is attached hereto and incorporated herein as **Exhibit "E."**

21. Conduct of on-demand and scheduled service by and FAR Part 135 or Part 121 certificated carriers is a regulated activity at the Airport and requires the execution of an operating agreement with the Plaintiff prior to the initiation of service.

22. Plaintiff also facilitates U.S. Customs and Border Protection Services which allows direct aircraft return flights to and from foreign countries. Such services are subject to a user fee.

23. Plaintiff has provided Defendant with an operating agreement to be executed. To date, Defendant has refused to execute the same.

24. Because Defendant has refused to execute an operating agreement, applicable fees are not being, and will not be collected.

25. Defendant's refusal to execute an operating agreement and provide proof of having the minimum required insurance, poses a threat to public health, safety and welfare.

26. Plaintiff has retained the undersigned counsel to represent it in this action and is obligated to pay them a reasonable fee for their services.

27. Plaintiff has performed all conditions precedent to bringing this action, or any such conditions precedent has been met, satisfied or waived by Defendant.

## COUNT I
### (Declaratory Relief)

28. Plaintiff re-alleges and adopts by reference numbered paragraphs 1 through 27 above.

29. This is an action for declaratory judgment and supplemental relief.

30. Defendant refuses to execute an operating agreement despite its requirement and Plaintiff sending Defendant one.

31. Defendant asserts that it does not need to execute an operating agreement in order to fly scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas because the service is "on-demand" and not "scheduled."

32. Defendant further asserts because the service is on-demand and not scheduled and because the Airport is a "Public Use Airport," the requested execution of the operating agreement is, again, not required.

33. Defendant asserts that it is not "based" at the Airport.

34. A bona fide dispute exists between the parties as to whether Defendant needs to execute an operating agreement before flying scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas.

35. There is a bona fide, actual, present and practical need for a judicial determination regarding whether Defendant must execute an operating agreement.

36. The relief sought herein is not merely the giving of legal advice or the answer to questions propounded by curiosity, but in fact has real consequences for the parties. A declaration by the

Court is necessary and appropriate to clarify and establish what rights, if any, Defendant has to fly on-demand and scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas or any other destination without first executing an operating agreement.

WHEREFORE, Plaintiff respectfully demands a judgment declaring that Defendant must execute an operating agreement before flying on-demand and scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas or any other destination, a judgment that Defendant must meet the Plaintiff's Minimum Operating Standards, together with interest, attorney's fees, costs and such other relief as this Court deems just and proper.

## COUNT II
### (Injunction)

37. Plaintiff re-alleges and adopts by reference numbered paragraphs 1 through 27 above.

38. This is an action for a permanent injunction.

39. Since March 30, 2019, Defendant has flown no fewer than four times from St. Augustine, Florida to Marsh Harbour, Bahamas without executing an operating agreement.

40. Defendant intends on continuing to fly scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas without executing an operating agreement.

41. Because Defendant has refused to execute an operating agreement, it is unknown, among other concerns, what insurance Defendant has, if any, which poses an imminent a threat to the public's safety, health and welfare.

42. If not permanently enjoined, said Defendant will cause Plaintiff irreparable harm.

43. If not permanently enjoined, nothing prevents Defendant from flying on-demand and scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas without executing an operating agreement.

44. The issuance of the injunction will serve the public interest by insuring that an operating agreement is executed prior to Defendant flying additional flights between St. Augustine, Florida and Marsh Harbour, Bahamas which would address, among other things, Defendant's current insurance status, which is unknown.

45. Plaintiff has no adequate remedy at law, especially one that will prevent Defendant from flying on-demand and scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas or any other destination without executing an operating agreement.

WHEREFORE, Plaintiff respectfully demands a judgment permanently enjoining the Defendant from flying on-demand and scheduled service between St. Augustine, Florida and Marsh Harbour, Bahamas, or any other on demand or scheduled service from St. Augustine, Florida, a judgment permanently enjoining Defendant from violating Plaintiff's Minimum Operating Standards, together with interest, attorney's fees, costs and such other relief as this Court deems just and proper.

Respectfully submitted, this 10th day of April, 2019.

ST. JOHNS LAW GROUP

/s/ Douglas N. Burnett
DOUGLAS N. BURNETT
Florida Bar No. 0146234
104 Sea Grove Main Street
St. Augustine, Florida 32080
(904) 495-0400 Telephone
(904) 495-0506 Facsimile
sjlgservice@gmail.com
jhatfield@sjlawgroup.com
*Attorneys for Plaintiff*

## VERIFICATION

I am an authorized representative of the Plaintiff named in the foregoing Complaint to which this Verification is attached. I have read the foregoing Complaint and the facts alleged therein are, to the best of my knowledge and belief, true and correct.

By: _____
Edward R. Wuellner as Executive Director
of ST. AUGUSTINE – ST. JOHNS
COUNTY AIRPORT AUTHORITY

STATE OF FLORIDA )
COUNTY OF ST. JOHNS )

Sworn to and subscribed before me the undersigned authority this _10_ day of April, 2019, by, Edward R. Wuellner, who is personally known to me or who produced a valid Florida driver's license as identification.

_____
NOTARY PUBLIC
State of Florida
Name: _____
Commission No: _____
My Commission Expires: ___

CYNTHIA K. HOLLINGSWORTH
MY COMMISSION # GG 256649
EXPIRES: November 2, 2022
Bonded Thru Notary Public Underwriters